RAWLINSON, Circuit Judge,
with whom Judge BERZON joins, dissenting:
This is admittedly a fairly close case but, upon reflection, I respectfully dissent from the conclusion of my esteemed colleagues that this case fits within the parameters for removal under the Class Action Fairness Act of 2005 (CAFA).
I start from the well-established premise that removal is disfavored when determining federal jurisdiction, and that any doubt that exists when considering removal statutes should be construed against removal. See Tanoh v. Dow Chemical Corp., 561 F.3d 945, 953 (9th Cir.2009); see also State of Hawaii v. HSBC Bank Nev. N.A., 761 F.3d 1027 (9th Cir.2014). As we also recognized in Tanoh, CAFA’s mass action provision is “fairly narrow.” 561 F.3d at 953.
With those principles firmly in mind, I reach a different conclusion than that of the majority. The plain language of the Class Action Fairness Act, 28 U.S.C. § 1332(d)(ll)(B)(i), confers jurisdiction upon federal district courts to try a “mass action.” A mass action is defined as:
any civil action ... in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs’ claims involve common questions of law or fact ...
28 U.S.C. § 1332(d)(ll)(B)(i) (emphasis added).
The majority concludes that the Plaintiffs proposed their cases “to be tried jointly” by filing a petition for coordination pursuant to California Code of Civil Procedure § 404.1. That section provides:
Coordination of civil actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes in selected site or sites will promote the ends of justice taking into account whether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and the likelihood of settlement of the actions without further litigation should coordination be denied.
CCCP § 404.1.
The plaintiffs’ petition for coordination stopped short of requesting a joint trial as contemplated by the plain language of the *1227 statute. See 28 U.S.C. § 1332(d)(ll)(B)(i) (defining a mass action as one in which claims of 100 or more persons “are proposed to be tried jointly”).
On page 6 of the Memorandum of Points and Authorities in support of the petition, plaintiffs gave the following explanation for seeking coordination:
Petitioners’ counsel anticipates that the actions will ... involve duplicative requests for the same defendant witness depositions and the same documents related to development, manufacturing, testing, marketing, and sale of the Dar-vocet Product. Absent coordination of these actions by a single judge, there is a significant likelihood of duplicative discovery, waste of judicial resources and possible inconsistent judicial rulings on legal issues.
(Emphases added).
It is a stretch to parse a proposal for a joint trial from this language. Rather, the obvious focus was on pretrial proceedings, ie., discovery matters.
On page 7 of the memorandum, plaintiffs informed the court that coordination was also sought because “[u]se of committees and standardized discovery in a coordinated setting will expedite resolutions of these cases, avoid inconsistent results, and assist in alleviating onerous burdens on the courts as well as the parties.” (Emphases added). Again, we see a focus on pretrial proceedings, with no mention of a joint trial.
On page 8, the plaintiffs urged coordination on the following bases:
One judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice; Common questions of fact or law are predominating and significant to the litigation; Coordination may serve the convenience of parties, witnesses and counsel the relative development of the actions and the work product of counsel; Coordination may facilitate the efficient utilization of judicial facilities and manpower; Coordination may enhance the orderly calendar of the courts; Without coordination, the parties may suffer from disadvantages caused by duplicative and inconsistent rulings, orders or judgments ...
Plaintiffs also stated: “[I]n light of the similarity of the actions, there will be duplicate discovery obligations upon the common defendants unless coordination is ordered. Coordination before initiation of discovery in any of the cases will eliminate waste of resources and will facilitate economy. ...” (Emphases added). Unlike the cases from the Seventh and Eighth Circuits cited in the majority opinion, not once does the Petition For Coordination mention “joint trial” or even “trial.” Rather, the continued focus is on pretrial matters.
The majority opinion isolates the phrases “duplicate ánd inconsistent rulings, orders, or judgments,” “two or more separate courts ... may render different rulings on liability and other issues,” and “hearing all of the actions for all purposes” to support its conclusion that the plaintiffs sought a joint trial. Majority Opinion, p. 1221. In doing so, the majority completely ignores all references to discovery, including on the same page containing the reference to liability, where Plaintiffs stated: “[I]n light of the similarity of the actions, there will be duplicate discovery obligations upon the common defendants unless coordination is ordered. Coordination before initiation of discovery in any of the cases will eliminate waste of resources and will facilitate economy....” (Emphases added). A fair reading of the entire petition for coordination reflects a decided focus on pretrial matters.
Reliance by the majority on the quoted portions of the petition to the exclusion of *1228 all else is inconsistent with the command that any doubt about federal jurisdiction be resolved in favor of remand. This is especially true where most of the quoted words have little to do with trial. I am not persuaded that a reference to “rulings and orders” evokes the concept of trial rather than pretrial matters. Indeed, the opposite may be true:
An order is the mandate or determination of the court upon some subsidiary or collateral matter arising in an action, not disposing of the merits, but adjudicating a preliminary point or directing some step in the proceedings.
Black’s Law Dictionary 1270 (10th ed.2009) (citing 1 Henry Campbell Black, A Treatise on the Law of Judgments, § 1, at 5 (2d ed.1902)).
In turn “[rjulings on motions are ordinarily orders ...” Id. (citing 1 A.C. Freeman, A Treatise on the Law of Judgments, § 19, at 28 (Edward W. Tuttle ed., 5th ed.1925)). Consequently, at best, Plaintiffs’ reference to rulings and orders is ambiguous, and ambiguity defeats removal. See Tanoh, 561 F.3d at 953.
The majority is also on shaky ground when relying on the plaintiffs’ reference to inconsistent judgments, because judgments may be rendered outside the con-fínes of a trial. Default judgments and summary judgments come readily to mind. See Federal Rules of Civil Procedure 55 and 56 (providing for entry of judgment prior to trial). Indeed, it is not at all uncommon for similar cases to be resolved short of trial. See, e.g., Navarrette v. Armite Labs. Inc., No. B203997, 2009 WL 1040304 at *1 (Cal.App. 2 Dist., April 20, 2009) (“Plaintiffs filed a tort action against 78 manufacturers and suppliers of products used for metal fabrication at a now-defunct foundry, where plaintiffs once worked. Plaintiffs allege that they were injured by their workplace exposure to defendants’ products. The trial court dismissed the case after sustaining demurrers to the plaintiffs’ fourth amended complaint, without leave to amend.”). Judgment in favor of defendants was affirmed; see id.; see also Baycol Cases I and II, No. B20493, 2009 WL 3353536 at *3 (CaLApp. 2 Dist., Oct. 20, 2009) (“Several hundred cases involving Baycol, including a number of class actions, which had been filed in California were consolidated in a Judicial Council Coordinated Proceeding (JCCP) in Los Angeles Superior Court.... During the next approximately two years many of the cases in the JCCP were dismissed or resolved in [defendant’s] favor on summary judgment....”) (emphases added).
Plaintiffs’ reference to rulings on liability also fit readily within the concept of resolving cases short of trial. See id. (resolving cases in defendant’s favor on summary judgment). Unsurprisingly, the majority’s contrary notion that a joint trial is “almost certainly require[d]” to determine liability, Majority Opinion, p. 1223-24, is not supported by citation to any California authority. The district court judges who rendered decisions remanding these cases to state court are all seasoned California practitioners, and not one of them interpreted the Petition For Coordination as requesting a joint trial. See Freitas v. McKesson, No. 12-5948 SC, 2013 WL 685200 at *4 (N.D.Cal., Feb. 25, 2013) (declining to “[i]nfer[ ] a request for a joint trial from Plaintiffs’ Petition, which does not expressly request such a trial”); see also Rice v. McKesson Corp., No. C12-05949 WHA, 2013 WL 97738 at *2 (N.D.Cal. Jan. 7, 2013) (rejecting the argument that Plaintiffs “implicitly proposed a removable mass action in their coordination petition by using the ambiguous language ‘for all purposes’ and ‘by raising the possibility of inconsistent judgments’ ”); Rentz v. McKesson Corp., No. CV 12-9945 PSG, 2013 WL 645634 at *3 (C.D.Cal. Feb. 20, 2013) (noting that the language in the petition for coordination “focuses on coor *1229 dination for pretrial purposes” and “the complete lack of any mention of joint trial”); Posey v. McKesson Corp., No. C 12-05939 RS, 2013 WL 361168 at *3 (N.D.Cal. Jan. 29, 2013) (holding that [ejonstruing plaintiffs’ petition for coordination as the functional equivalent of an express.request for a joint trial would conflict with both the guidance provided by our court of appeals in Tanoh, as well as with the general canon of strict construction of removal statutes) (citation and alteration omitted).
The cases from the Seventh and Eighth Circuit relied upon by the majority are easily distinguishable. In this case, the Plaintiffs requested coordination of the cases “for all purposes.” The majority reads that phrase as implicitly requesting a joint trial, citing the Seventh Circuit’s decision in In re Abbott Laboratories, Inc., 698 F.3d 568 (7th Cir.2012). However, not only did the Seventh Circuit consider a completely different procedure, consolidation as opposed to coordination, see id., at 570, the plaintiffs’ request in that case explicitly and expressly referenced “consolidation of the cases through trial and not solely for pretrial proceedings,” thereby removing any question of the plaintiffs’ intent. Id. at 571 (footnote reference and internal quotation marks omitted) (emphases added). In fact, there was really nothing implicit about the Abbott plaintiffs’ request for a joint trial. Rather, the request for a joint trial was open and notorious.
In a similar vein, the plaintiffs in Atwell v. Boston Scientific Corp., 740 F.3d 1160, 1161 (8th Cir.2013) requested that their cases be assigned “to a single judge for purposes of discovery and trial ...” (emphasis added); see also Bullard v. Burlington Northern, 535 F.3d 759, 761-62 (7th Cir.2008) (“A complaint identifying 144 plaintiffs ... implicitly proposes one trial....”); Koral v. Boeing, 628 F.3d 945, 947 (7th Cir.2011) (citing Bullard, 535 F.3d at 762 for the proposition that a proposal for a joint trial “can be implicit, as where a single complaint joins more than 100 plaintiffs’ claims ...”) (emphasis added). None of these cases address the facts of this case, where there was not a single Complaint joining over one hundred plaintiffs, and there was no use of the word “trial” anywhere in the petition seeking coordination.
The California district court judges who considered this issue uniformly distinguished Abbott. See Freitas, 2013 WL 685200 at *4 (“Abbott concerned plaintiffs who had explicitly asked for their cases to be consolidated ‘through trial’ and ‘not solely for pretrial proceedings.’ Abbott is therefore distinguishable ... ”) (citation omitted); Rice, 2013 WL 97738 at *2 (“Defendants’ reliance on ... Abbott is misplaced....”); Rentz, 2013 WL 645634 at *3 (“The Court is neither persuaded that it should follow Abbott nor that Abbott applies to the facts of the present case.... ”); Posey, 2013 WL 361168 at *3 (“Abbott is easily distinguishable from the present case on its facts.... ”). I am persuaded to the view of these able district court judges. See United States v. Graf, 610 F.3d 1148, 1160 (9th Cir.2010) (referencing decisions from district courts within the circuit); see also In re First Alliance Mort. Co., 471 F.3d 977, 1005 (9th Cir.2006) (same).
The conclusion that Plaintiffs implicitly requested a joint trial is not supported by the language of CAFA or by the cases from the Seventh and Eighth Circuits so heavily relied upon by the majority. That conclusion is inconsistent with precedent from the Supreme Court and this circuit that Plaintiffs are the masters of their Complaints, that removal statutes (including CAFA) are to be construed narrowly, that any ambiguity is to be construed against removal[1], and that the plain lan *1230 guage of the statute controls. Finally, nothing prevents Defendants from seeking removal if and when Plaintiffs actually request a joint trial. See Tanoh, 561 F.3d at 956. I respectfully dissent.

. I disagree with the majority's unsupported contention that "there is nothing ambig *1230 uous about asking for coordination 'for all purposes.’ ” Majority Opinion, p. 1225 n. 8 (internal quotation marks omitted). That contention simply begs the question. Considering the petition for coordination as a whole, the phrase "for all purposes” could easily be interpreted as referring to all pretrial or discovery purposes, particularly in view of the consistent explicit references to pretrial and discovery matters, and not one mention of the word "trial.” See Far West Federal Bank, S.B. v. Dir., Office of Thrift Supv., 746 F.Supp. 1042, 1048 (D.Or.1990), reversed on other grounds, 951 F.2d 1093 (9th Cir.1991) (finding the phrase "for all purposes” ambiguous); see also Francis v. LaMarque, No. C01-3957, 2002 WL 31414310 at *4 (N.D.Cal.2002) (finding an instruction containing the phrase "for all purposes” ambiguous when considered in the context of another instruction). The majority criticizes these cases as being distinguishable, but still offers no supporting authority for its contention that the phrase "for all purposes” is not ambiguous. The fact remains that the phrase "for all purposes” upon which the majority so heavily relies has been found ambiguous by at least two courts.
The majority also argues that the Plaintiffs' petition for coordination did not state that coordination was sought solely for pretrial purposes. But neither does the petition state that a joint trial is requested. At least the words "pretrial” and "discovery” were specifically and consistently referenced in Plaintiffs' petition, which is more than can be said for the words "joint trial,” which were not mentioned at all. Finally, as discussed in the text, affirming the district court's remand would not create a circuit split, because the cases from the Seventh and Eighth Circuits are readily distinguishable, most notably by an explicit request from Plaintiffs for a joint trial.